IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







PD-1059-09






DERRICK DWAYNE GRANT, Appellant



v.


THE STATE OF TEXAS





On Discretionary Review of 


Case No. 10-07-00317-CR


of the Tenth Court of Appeals,


McLennan County






 Womack, J., delivered the opinion of the unanimous Court.



 The appellant, Derrick Dwayne Grant, pled guilty to burglary of a habitation with a
deadly weapon. After a jury trial on punishment, he was sentenced to 55 years in prison. The
Tenth Court of Appeals reversed the judgment, holding that the trial court erred in denying the
appellant's Batson (1) challenge to the State's exercise of peremptory strikes. The Court found that
the State's explanation for striking venire member J. Franklin was a pretext for racial
discrimination because "there was no meaningful examination of Franklin regarding the reason
the State used to strike him." 

 We granted the State's petition for discretionary review to determine whether a lack of
meaningful questioning can be sufficient, on its own, to support a Batson challenge, and whether
the Court of Appeals properly applied the "clearly erroneous" standard of review. We hold that a
lack of meaningful questioning might be sufficient to support a Batson challenge under the
appropriate circumstances, but the Court of Appeals erred in applying the standard of review in
this case. We therefore reverse the Court's decision and remand for consideration of the
remaining claims. 

I. Standard of Review In Batson, the United States Supreme Court held that, while a prosecutor ordinarily may
exercise peremptory strikes for any reason related to his views concerning the outcome of the
trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on
account of their race." (2) A Batson challenge to a peremptory strike consists of three steps. First,
the opponent of the strike must establish a prima facie showing of racial discrimination. Second,
the proponent of the strike must articulate a race-neutral explanation. Third, the trial court must
decide whether the opponent has proved purposeful racial discrimination. (3)

 The trial court's ruling in the third step must be sustained on appeal unless it is clearly
erroneous. (4) Because the trial court's ruling requires an evaluation of the credibility and demeanor
of prosecutors and venire members, and because this evaluation lies peculiarly within the trial
court's province, we defer to the trial court in the absence of exceptional circumstances. (5) 

II. The Challenged Strike

 As Article 35.17(1) of the Code of Criminal Procedure permits, voir dire examination in
this non-death-penalty trial was conducted in the presence of the entire panel of venire members.
During voir dire, Franklin was asked to respond to several general questions about evidence and
criminal law, but he was not asked about his responses to the written juror questionnaire. At the
Batson hearing, the State articulated this explanation for striking Franklin: 

 On Juror Number 20, Mr. Franklin, his actually comes from his juror card. He
noted on his juror card that his wife works at the Wal-Mart return center, which is
from the information we have where the Defendant's - I don't know if she's a
new girlfriend or somebody who's just been a part of his life for some period of
time . . . our information is that she also works there. It's a girl who is, I guess,
seeing the Defendant off and on throughout the time that the victim is seeing him
[and she] also works with that juror's wife. And we had some concerns about that
because, obviously, people who work together talk and people who go home to
their spouses talk to them about why they're in court.

 The appellant argued that any relationship between Franklin's wife and the appellant's
girlfriend "would be the subject of an inquiry in chambers to see if that actually existed." The
appellant further argued that the State could not "rely on surmise and speculation  to disprove
a prima facie case of systemic racial discrimination.  [I]t has to be the subject of specific
inquiry into those arenas and areas in order for it to get over the prima facie case." 

 The State then elaborated on its explanation: 

 I would also tell you that as far as Number 20 goes, when we were looking
through the cards[, a prosecutor] right away mentioned before we even started the
process that the prospective juror's spouse worked at the same place as a woman
the Defendant had been involved with.

 

 


 [N]o further inquiry or no further assertions by any of those people would have
changed my opinion on why I felt like they couldn't be fair in this case and why I
felt like a preemptory [sic] challenge was necessary. 


The trial court ultimately found that "the State used their preemptory [sic] strikes for race-neutral
reasons," but it did not make findings specific to any challenged strike.

III. On Appeal

 The Court of Appeals began its analysis by listing factors from our opinion in Whitsey v.
State, (6) including the factor that "there was a lack of questioning to the challenged juror or a lack
of meaningful questions." (7) The Court first suggested that the Whitsey factors were a "useful
guide" but were not dispositive on the issue of discriminatory intent: a factor would only "weigh
against the legitimacy of a race-neutral explanation" and "tended to show . . . that the State's
reasons for the strike were not actually supported by the record or were an impermissible
pretext." (8) After reciting the parties' arguments, however, the Court made oral questioning a
requirement, stating that "[t]he State must engage in meaningful voir dire examination on a
subject it alleges it is concerned about." (9) The Court cited Miller-El v. Dretke. (10)

 While the Court of Appeals seemed at another point to qualify its requirement by saying
that the lack of "meaningful voir dire examination" is only "some evidence that the asserted
reason for the strike was a pretext for discrimination," (11) the Court's conclusion reestablished oral
questioning as a requirement. The Court found that the State's explanation was not supported by
the record and was a pretext for discrimination because "absolutely no exchange between
Franklin and the State took place regarding the reason for striking him." (12) Accordingly, the Court
found the trial court's acceptance of the State's explanation to be clearly erroneous.

 In dissent, Justice Reyna took issue with the majority's statements that the State must
engage in meaningful voir dire examination on a subject it alleges it is concerned about, and that
a failure to do so is some evidence that the explanation was a pretext. Justice Reyna argued that
in the vast majority of cases, a Batson challenge will not be successful if it rests solely on a lack
of meaningful questioning. (13) In Justice Reyna's view, the majority's reliance on Reed and Miller-El was misplaced because those cases used the lack-of-questioning factor only in conjunction
with a comparative analysis of similarly situated jurors. (14)

IV. Analysis

 Shortly after Batson was decided, this Court suggested a number of factors that could be
considered in the third step of a Batson challenge. In Keeton v. State, (15) we looked approvingly to
decisions in Alabama, Florida, and Missouri that set out illustrative lists of the types of evidence
that could be used. Shortly thereafter in Whitsey, we applied a nonexclusive list of five factors
used by the Florida courts (and cited in Keeton) to find that the prosecutor had exercised
peremptory strikes based on race. (16)

 Neither Keeton, nor Whitsey, nor any of our numerous Batson decisions have ever held
that the presence of any particular factor should be dispositive on the issue of discriminatory
intent.

 The Court of Appeals cited Miller-El for the proposition that the State "must engage in
meaningful voir dire on a subject it alleges it is concerned about." (17) We do not read Miller-El to
stand for that proposition. To the contrary, Miller-El pointed to a lack of questioning only as
additional evidence of discrimination, and quoted an Alabama holding that the failure to engage
in meaningful voir dire examination on a subject the State alleges it is concerned about is
evidence suggesting pretext. (18) Miller-El also was a case in which prospective jurors were
examined individually and apart from other prospective jurors; as we explain below, the
evidentiary value of lack of questioning is likely to be significantly less when jurors are
examined in a group. 

 In Vargas v. State, (19) we stressed that the Keeton and Whitsey factors could be considered
by the trial court, but they should not replace the applicable standard of review: 

 Appellant's contention that the objective factors discussed in Keeton control the
analysis is not correct. These factors certainly may be considered in evaluating the
trial judge's overruling of a Batson claim, but they are not determinative. The
overriding standard is still whether the trial judge's decision was supported by the
record so that it is not clearly erroneous. (20)

 Nor have we held that some factor in addition to a lack of questioning must be present in
order to find discriminatory intent. We said in Chambers v. State, "In cases reversed because of
the State's failure to establish the legitimacy of its explanations through voir dire questions, at
least one of two other factors has existed[:] 1) the legitimacy of the State's apprehension was not
obvious and 2) there was other evidence of disparate treatment." (21) While we agree with
Chambers and Justice Reyna that the lack-of-questioning factor may arise in conjunction with
other factors, we do not find support in our cases for the State's more extreme proposition that
"basing reversal exclusively on a lack of questioning is wrong." Categorically requiring more
than the lack-of-questioning factor would be incompatible with Keeton's and Whitsey's
characterization of the factors as nonexclusive illustrations of the types of evidence that can be
considered - just as it would be inconsistent to allow the lack-of-questioning factor to be
dispositive.

 Our Batson cases also contain two further holdings specifically applicable to the facts of
the present case. First, we have repeatedly held that a venire member's written answers to a juror
questionnaire may provide a valid reason for a peremptory strike. (22) Second, we have held that the
reason for a peremptory strike need not actually turn out to be correct. (23) 

 In the present case, the State explained that it struck Franklin because a response on
Franklin's questionnaire led the State to believe that Franklin's wife knew the appellant's
girlfriend. The trial court had before it Franklin's written answer, the record of the entire voir
dire, and the two prosecutors' representations that they had certain information about the
appellant's girlfriend and suspected a relationship to Franklin's wife. Thus there was a
foundation in the record for the trial court's ruling that the explanation was not a pretext for
discrimination. The credibility of the prosecutors' representations about their information and
suspicion is a matter "peculiarly within the trial court's province." (24) The correctness of the
prosecutors' suspicion was irrelevant. (25) 

 The appellant's argument that the lack of questioning is persuasive evidence of
discriminatory intent fails for two reasons. First, the State did question Franklin. A written
questionnaire was provided to Franklin, and Franklin gave a written response with certain
information about his wife. The prosecutors represented that their strike was based on this
response. A written response to a written question can be just as valid an explanation for a strike
as an oral response to an oral question. (26)

 Second, a lack of oral questioning to flesh out a written response has significantly less
persuasive value when prospective jurors are being questioned together. When each venire
member may be examined for extensive periods of time apart from the rest of the panel, (27) the
voir dire process may take weeks. In contrast, the record in this case reflects that each side was
given "45 minutes to an hour" to complete its voir dire examination of the entire panel. Within
these constraints a party is limited in its ability to ask an individual venire member on whom the
party may exercise a strike - let alone all such venire members - about specific written responses
to a written juror questionnaire. In fact, after reviewing the voir dire transcript in this case, we
cannot find that either party asked any venire member about any written response. 

 We conclude that the Court of Appeals misapplied the standard for reviewing the trial
court's ruling. Properly applying the standard of review, the Court should have given deference
to the trial court's evaluation of the prosecutors' credibility and should not have given dispositive
weight to the lack-of-questioning factor. Based on our review of the record, the trial court's
ruling denying the appellant's Batson challenge was not clearly erroneous.

 We reverse the judgment of the Court of Appeals and remand the case for consideration
of the appellant's remaining claims.


Delivered November 17, 2010.

Publish.
1. Batson v. Kentucky, 476 U.S. 79 (1986).
2. Id., at 89.
3. See, e.g., Purkett v. Elem, 514 U.S. 765, 767 (1995); Young v. State, 283 S.W.3d 854, 866 (Tex. Cr. App.
2009).
4. See Snyder v. Louisiana, 552 U.S. 472, 477 (2008).
5. Id.; see also Watkins v. State, 245 S.W.3d 444, 448 (Tex. Cr. App. 2008) ("[A] reviewing court should
examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine,
rather than a pretext, with great deference, reversing only when that conclusion is, in view of the record as a whole,
clearly erroneous.").
6. 796 S.W.2d 707 (Tex. Cr. App. 1990).
7. Grant v. State, 2009 WL 1412854, at *2 (Tex. App.-Waco May 20, 2009) (citing Whitsey, 796 S.W.2d, at
713-14).
8. Id. (emphasis added).
9. Id., at *3 (emphasis added).
10. 545 U.S. 231, 246 (2005).
11. Grant, 2009 WL 1412854, at *3 (emphasis added) (citing Reed v. Quarterman, 555 F.3d 364, 376 (5th
Cir. 2009)).
12. Id.
13. Id., at *4.
14. Id.
15. 749 S.W.2d 861, 865-69 (Tex. Cr. App. 1988).
16. 796 S.W.2d, at 713-16. In Whitsey, the prosecutor testified that he struck a teacher and the wife of a
nurse's assistant because they were likely to be "liberal." But the prosecutor failed to ask any questions of either
juror. The failure to ask the jurors any questions, specifically whether they were in fact liberal, was significant in
conjunction with the factor that the prosecutor's explanation was "based on a group bias not shown to apply to the
challenged juror." Id., at 716. Similarly, in Emerson v. State, 851 S.W.2d 269, 273-74 (Tex. Cr. App. 1993), we
found that the State's explanation was not legitimate when the State believed that the venire member was an
unemployed college student or professor, and therefore liberal. Because the State did not ask any questions to
confirm the venire member was liberal, the State improperly "applied a group bias without inquiring whether it
applied to [the venire member] specifically." Id., at 274. 
17. Grant, 2009 WL 1412854, at *3 (emphasis added).
18. 545 U.S., at 246 (quoting Ex parte Travis, 776 So.2d 874, 881 (Ala. 2000)).
19. 838 S.W.2d 552 (Tex. Cr. App. 1992).
20. Id., at 554.
21. 866 S.W.2d 9, 24-25 (Tex. Cr. App. 1993).
22. See, e.g., Jasper v. State, 61 S.W.3d 413, 422 (Tex. Cr. App. 2001); Camacho v. State, 864 S.W.2d 524,
529 (Tex. Cr. App. 1996).
23. For example, in Johnson v. State, 68 S.W.3d 644 (Tex. Cr. App. 2002), the record reflected that a person
of the same name and date of birth as a venire member had been arrested. In response to the appellant's complaint
that the State failed to ask the venire member whether she was the person arrested, we stated, "As the party making
the Batson challenge, appellant had the burden to show that the explanation given was merely a pretext for
discrimination. It is not enough merely to show that a proffered explanation turns out to be incorrect.  Here,
appellant has failed to prove that the prosecutor's explanation was incorrect, much less that it was a pretext for
discrimination." Johnson, 68 S.W.3d, at 649. In Ford v. State, 1 S.W.3d 691, 694 (Tex. Cr. App. 1999), the State
struck venire member Allen because she knew the appellant's mother, but it was venire member Alaniz who actually
knew the appellant's mother. We found that "[a]ll appellant has proven on appeal is that the reason given was
incorrect; this is not equal to proving that the reason given was a pretext for a racially motivated strike." Ford, 1
S.W.3d, at 694. 
24. Snyder, 552 U.S., at 477. 
25. See Johnson, 68 S.W.3d, at 649; Ford, 1 S.W.3d, at 694. 
26. See Jasper, 61 S.W.3d, at 422; Camacho, 864 S.W.2d, at 529.
27. See Tex. Code Crim. Proc. art. 35.17(2).